1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9

LEO FANNON,

10                              Petitioner,

11          v.

12  LISA OLIVER-ESTES,

13                              Respondent.

Case No. 3:17-cv-05790-BHS-TLF

REPORT AND
RECOMMENDATION

Noted for June 1, 2018

14

15          This matter comes before the Court on Petitioner Leo Fannon's petition for writ of habeas

16  corpus under 28 U.S.C. § 2254, challenging his Cowlitz County Superior Court convictions for

17  multiple drug offenses. Mr. Fannon alleges that his jury trial was unfair because of violations of

18  his rights under the Fourth, Fifth and Fourteenth Amendments, as well as a denial of his right to

19  effective assistance of counsel under the Sixth Amendment. For the reasons set forth below, the

20  undersigned recommends that petitioner's claims all be DISMISSED, and that issuance of the

21  Certificate of Appealability ("COA") be DENIED.

22  I.      BACKGROUND

23          A.      Statement of Facts

24          The Washington Court of Appeals determined the relevant facts as follows:

25

REPORT AND RECOMMENDATION - 1

On November 12, 2014, Longview police officers executed a search warrant at a Longview residence. After entering the residence, Sergeant Raymond Hartley saw Fannon exit a bedroom. Hartley searched the bedroom and saw bags containing methamphetamine and heroin on a nightstand. Hartley also saw a black leather jacket in the bedroom, which contained a set of scales with residue on them, packaging material, a bag containing methamphetamine, eight oxycodone pills, ten methadone pills, and two clonazepam pills. Additionally, officers found $2,615 in cash after searching Fannon incident to his arrest.

According to Detective Seth Libbui, Fannon agreed to speak with him after being advised of his *Miranda* rights. Libbui stated that Fannon admitted that the bedroom and the drugs contained therein were his but denied that he sold drugs. Libbui also stated that Fannon had told him that he obtained his cash by fixing cars and selling them.

The State charged Fannon by amended information with one count of unlawful possession of a controlled substance with intent to deliver and four counts of unlawful possession of a controlled substance. The State also alleged a school zone sentencing enhancement with regard to his unlawful possession with intent to deliver charge.

During Hartley's trial testimony, defense counsel asked to voir dire Hartley, and the following exchange took place:

[Defense counsel]:    Sergeant Hartley, where was that scale found?
[Hartley]:    Inside of a jacket in that bedroom.
[Defense counsel]:    In that same bedroom that you were in before?
[Hartley]:    Yes.
[Defense counsel]:    And do you know anything about the jacket itself? Do you know what kind of jacket it was?
[Hartley]:    I believe it was a black leather jacket.
[Defense counsel]:    Do you know what size?
[Hartley]:    Mr. Fannon's size actually; it looked to be about a medium.
[Defense counsel]:    When you say Mr. Fannon's size, did you try it on him?
[Hartley]:    No.
[Defense counsel]:    So that's just a guess?
[Hartley]:    No, I have other information that would corroborate that.

Report of Proceedings (RP) at 133. The State subsequently referred to the jacket at issue as "Mr. Fannon's jacket" on multiple occasions during Hartley's testimony, asking the following:

REPORT AND RECOMMENDATION - 2

> [State]:        Now, besides these eight pills, did you locate anything else inside of Mr. Fannon's jacket?
> . . . .
> [State]:        Okay. And were this—was that the only things you found in Mr. Fannon's jacket?
> . . . .
> [State]:        Now, you indicated you found these items in Mr. Fannon's jacket, is that correct?
> . . . .
> [State]:        Would you recognize Mr. Fannon's jacket if you saw it again?

RP at 140, 142, 144. In response to this final question, Hartley testified that the jacket hanging on the back of Fannon's chair in the courtroom was the same jacket he had found in the bedroom.

Libbui testified that he asked Fannon what cars he had sold to obtain his cash, to whom he had sold the cars, and whether he had any documentation of such sales. The State then asked Libbui why he had asked Fannon these types of questions, to which Libbui responded, "Because—well, I didn't believe him. The way he said it to me and the evidence, I—I initially didn't feel that that matched up to what I saw." RP at 236. Defense counsel did not object to the State's question or to Libbui's response. The following exchange also took place during Libbui's trial testimony:

> [State]:        Was he—was he providing you with any information as to how he acquired this money at this point?
> [Libbui]:      He wouldn't. He—he was unable to provide me anything, any—anything factual of who he sold it to. All the questions I just mentioned, there was no evidence provided to me that could verify that.
> [State]:        Okay. So you—so you had been unable to verify any—any information he was providing to you?
> [Libbui]:      I had no start. There was absolutely nothing that would point me in even a direction where I could even call someone, or look up something in a DMV record, or there's no—I mean, there's nothing. He—I was given nothing to work with, so—.

RP at 236-37. Again, defense counsel did not object.

Fannon testified in his defense. Fannon denied that he lived at the residence searched by police and denied that the jacket or controlled substances found by police belonged to him. Fannon stated that he obtained his cash from car sales.

The jury returned verdicts finding Fannon guilty of all the charges against him. The jury also returned a special verdict finding that Fannon

committed unlawful possession of a controlled substance with intent to deliver
within 1,000 feet of the perimeter of a school ground. . . .

Dkt. 11, Notice of Filing of Submission of Relevant State Court Record, Exhibit 2, pp. 2-4

(internal footnote omitted).

B.      Standard Court Procedural History

Petitioner directly appealed his convictions to the Washington State Court of Appeals,

which affirmed those convictions. Dkt. 11, Record. Exhibit 2. The Washington State Supreme

Court denied review. *Id.*, Exhibits 7-8. The Washington State Court of Appeals issued its

mandate on December 13, 2016. *Id.*, Exhibit 9. Petitioner did not file a personal restraint petition

or otherwise collaterally challenge his convictions.  Dkt. 1, Petition, at 3.

On October 2, 2017, Mr. Fannon filed his petition for writ of federal habeas corpus with

this Court. Dkt. 1. The petition raises the following grounds for relief:

(1)      Multiple issues concerning the manner of his arrest denied him his
Fifth Amendment rights against self-incrimination;

(2)      The lack of a valid search warrant resulted in a denial of his right
against unreasonable search and seizure under the Fourth Amendment;

(3)      He was denied his due process right to a fair trial guaranteed by the
Fourteenth Amendment because of alleged discovery violations by the
State and various evidentiary issues; and

(4)      He was denied his right to effective assistance of counsel guaranteed
by the Sixth Amendment. Because his lawyer failed to investigate
certain aspects of his case, and failed to object during trial.

*Id.* at 5, 7, 8, 10; Dkt. 1-1 at 1. Petitioner filed a motion for discovery or an evidentiary hearing.

Dkt. 14.

II.      DISCUSSION

A.      Standard of Review

A petition filed under 28 U.S.C. § 2254 for federal habeas corpus relief:

[S]hall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is contrary to clearly established precedent if the state court uses federal law in a way that contradicts legal holdings of Supreme Court opinions. *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003). Additionally, a state court decision is contrary to the Supreme Court's clearly established precedent "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, "and nevertheless arrives at a result different from" that precedent. *Id.*

A state court decision involves an "unreasonable application" of the Supreme Court's clearly established precedent if: (1) the state court "identifies the correct governing legal rule" from the Supreme Court's cases, "but unreasonably applies it to the facts" of the petitioner's case; or (2) the state court "unreasonably extends a legal principle" from the Supreme Court's precedent "to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407 (2000). The state court decision, however, must be "more than incorrect or erroneous." *Lockyer*, 538 U.S. at 75. That is, "[t]he state court's application of clearly established law must be objectively unreasonable." *Id.*

This is a "highly deferential standard," which "demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)). "A state court's determination that a claim lacks

1  merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

2  correctness of the state court's decision.'" *Harrington v. Richter*, 562 U.S. 86, 101 (2011)

3  (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "[H]abeas corpus is a 'guard

4  against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary

5  error correction through appeal." *Harrington,* 562 U.S. at 102-03 (quoting *Jackson v. Virginia*,

6  443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment)). "As a condition for

7  obtaining habeas corpus from a federal court," therefore, "a state prisoner must show that the

8  state court's ruling on the claim being presented was so lacking in justification that there was an

9  error well understood and comprehended in existing law beyond any possibility for fair-minded

10 disagreement." *Id.* at 103.

11      A state court's factual determination is "presumed to be correct," and the petitioner has

12 "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28

13 U.S.C. § 2254(e)(1); *Shriro v. Landrigan,* 550 U.S. 465, 473-74 (2007). As such, a district court

14 "may not simply disagree with the state court's factual determinations," but must "conclude" that

15 those determinations did not have even "fair support" in the state court record. *Marshall v.*

16 *Lonberger,* 459 U.S. 422, 432 (1983).

17      "[W]hether a state court's decision was unreasonable" also "must be assessed in light of

18 the record the court had before it." *Holland v. Jackson*, 542 U.S. 649, 652 (2004); *Miller-El v.*

19 *Cockrell*, 537 U.S. 322, 348 (2003). The district court's review "focuses on what a state court

20 knew and did," and the state court's decision is "measured against [the Supreme] Court's

21 precedents as of 'the time the state court renders its decision.'" *Cullen v. Pinholster*, 563 U.S. at

22 182 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003)).The petitioner must establish the

23 error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht*

24

25

1  *v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Katteakos v. United States*, 328 U.S. 750, 776

2  (1946), and *United States v. Lane*, 474 U.S. 438, 449 (1986)).

3          Under 28 U.S.C. § 2254, Rule 7, a district court may expand the record even if an

4  evidentiary hearing is not ordered. *Earp v. Davis,* 881 F.3d 1135, 1142 (9th Cir. 2018).

5  Discovery is allowed "for good cause shown"; it is essential when discovery is necessary in

6  order to fully develop the facts of a claim. *Bracy v. Gramley,* 520 U.S. 899, 908 (1997); *Jones v.*

7  *Wood,* 114 F.3d 1002, 1008-09, 1011 (9th Cir. 1997). Yet the district court need not conduct

8  discovery if the petitioner makes speculative assertions, simply fishing for possible evidence and

9  conjectures that he or she "*might possibly* discover" useful evidence; the Ninth Circuit gives

10  broad deference to the district court on supervising discovery. *Earp,* 881 F.3d at 1144 (emphasis

11  in the original); *Jones,* 114 F.3d at 1008-09. The district court abuses its discretion when it

12  denies discovery if the discovery would be indispensable to a "fair, rounded, development of the

13  material facts." *Earp,* at 1142 (*quoting Jones,* 114 F.3d at 1008-09).

14          An evidentiary hearing is required if (1) the petitioner has satisfied the requirements of

15  *Townsend v. Sain*, 372 U.S. 293 (1963), and (2) if true, the allegations would entitle the

16  petitioner to relief.  *Hurles v. Ryan,* 752 F.3d 768, 791 (9th Cir. 2014). Under *Townsend*, the

17  district court is required to hold an evidentiary hearing if the state court's determinations of fact

18  are unsupported by the record as a whole, and the state court employed a fact-finding procedure

19  that was inadequate to give a full and fair hearing. *Hurles*, 752 F.3d at 791.

20          B.    Petitioner Fails to Establish Any Violation of His Fifth Amendment Rights

21          Petitioner claims as his first ground for habeas corpus relief that his Fifth Amendment

22  rights were denied because (contrary to the detectives' testimony at trial) he never was

23  interrogated following his arrest, no confirming evidence was presented at trial regarding any

24  interrogation; and he testified that the detectives' account of the arrest and questioning was

25

1    untrue. Dkt. 1, p. 5.

2         This claim is essentially a factual challenge to the evidence presented at trial, which fails

3    for two reasons. First, petitioner's conclusory allegation that all three detectives testified falsely,

4    does not rise to the level of "clear and convincing" evidence needed to rebut the "presumption of

5    correctness" attached to the state court's factual determination. *Marshall v. Lonberger*, 459 U.S.

6    422, 432 (1983); 28 U.S.C. § 2254(e)(1). Second, petitioner has failed to show that the

7    detectives' assignment records are "new", in that he could not have presented that evidence at

8    trial, or that he or trial counsel were prevented in any way from obtaining the records to the

9    extent they existed. *Townsend v. Sain*, 372 U.S. 293, 317 (1963).

10        Plaintiff is making a claim of "actual innocence, which has "has never been held to state

11   a ground for federal habeas relief absent an independent constitutional violation occurring in the

12   underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). In other

13   words, at the heart of petitioner's claim is a request to have his trial re-litigated, something a

14   federal district court may not do. *Estelle*, 463 U.S. at 887. As such, petitioner cannot prevail on

15   his first ground for habeas corpus relief, and therefore it should be dismissed.

16        C.    Petitioner Lacks Standing to Bring a Fourth Amendment Claim

17        In his second ground for habeas corpus relief, petitioner claims the search warrant that

18   was issued for his arrest violated his Fourth Amendment rights. Specifically, petitioner asserts he

19   did not live at the address where he was arrested and had just graduated from drug court, and

20   therefore there were no new charges filed against him to justify the issuance of a warrant. Dkt. 1,

21   p. 7. Petitioner asserts that no such search warrant exists. Dkt. 14, p. 3.

22        "[W]here the State has provided an opportunity for full and fair litigation of a Fourth

23   Amendment claim," a prisoner "may not be granted federal habeas corpus relief on the ground

24   that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone*

25

REPORT AND RECOMMENDATION - 8

1  *v. Powell*, 428 U.S. 465, 494 (1976); *see also Gordon v. Duran*, 895 F.2d 610, 613 (9th Cir.

2  1990) (all that is required is "the initial opportunity for a fair hearing," regardless of whether a

3  defendant "did in fact litigate [his or her] Fourth Amendment claim"). And where such an

4  opportunity exists, the federal habeas court's inquiry "into the trial court's subsequent course of

5  action" is foreclosed. *Caldwell v. Cupp*, 781 F.2d 714, 715 (9th Cir. 1986).

6      Washington law provides for an evidentiary hearing to be conducted, if the trial court

7  determines that one is necessary based on a motion to suppress physical, oral or identification

8  evidence. CrR 3.6. Here, there is nothing in the record to indicate a CrR 3.6 hearing was held any

9  time prior to or during petitioner's trial, or that plaintiff or trial counsel requested such a hearing,

10  or submitted any motions to suppress evidence. Thus, this is not a situation where petitioner

11  requested a hearing on a Fourth Amendment claim, but was denied the opportunity to do so by

12  the state trial court. As such, he is precluded from raising that claim in this proceeding.

13      D.    Petitioner Fails to Show Any Violation of His Right to a Fair Trial

14      Petitioner's third ground for federal habeas corpus relief alleges he was denied a fair trial

15  in violation of his Fourteenth Amendment due process rights. Specifically, petitioner alleges the

16  following violations: no discovery; no pretrial hearings for acquiring a defense; no preserving of

17  exculpatory evidence (jacket that held the elements of the crime); no disclosure of allegations

18  during the CrR 3.5 hearing held on the second day of trial; bail was revoked by trickery that

19  instigated a time bar violation; prosecutorial misconduct; collusion by appointed counsel; and a

20  biased trial judge. Dkt. 1, at 8.

21      These claims are conclusory, without any factual support in the record, particularly the

22  allegations of prosecutorial misconduct, collusion by appointed counsel, and a biased trial judge.

23  Therefore, petitioner is not entitled to habeas corpus relief based on those claims. *Jones v.*

24  *Gomez*, 66 F.3d 189, 204 (9th Cir. 1995) ("[C]onclusory allegations which are not supported by

25

1    a statement of specific facts do not warrant habeas relief.") (quoting *James v. Borg*, 24 F.3d 20,

2    26 (9th Cir. 1994)).

3        Petitioner also fails to explain how bail was revoked by trickery or that its revocation

4    otherwise resulted in a due process violation. This claim too, therefore, is conclusory and thus

5    not entitled to federal habeas corpus relief. In addition, any claim a criminal defendant may have

6    to pretrial bail is moot once he is convicted. *Murphy v. Hunt*, 455 U.S. 478, 481-482 (1982)

7    ("[T]he question [i]s no longer live because even a favorable decision on it would not [entitle the

8    defendant] to bail."). It is unclear what due process violation petitioner is asserting via his claim

9    of no pretrial hearings for acquiring a defense, but here too he fails to provide a specific

10   statement of facts to support this claim. That claim therefore fails as well for being wholly

11   conclusory. *Jones*, 66 F.3d at 204; *James*, 24 F.3d at 26.

12       Disclosure of discovery is required "only of evidence that is both favorable to the accused

13   and 'material either to guilt or to punishment.'" *United States v. Bagley*, 473 U.S. 667 (1985)

14   (quoting *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). The defendant, furthermore, has the

15   burden "to prove that the [particular] evidence was not disclosed." *Coe v. Bell*, 161 F.3d 320,

16   344 (9th Cir. 2001). In this case, petitioner does not set forth specific facts to show that the

17   prosecution withheld evidence that is both favorable to him and material to his guilt or

18   punishment. Petitioner thus fails to establish a due process violation regarding the disclosure of

19   evidence.

20       As for petitioner's claim that the government failed to preserve exculpatory evidence,

21   unless he "can show bad faith on the part of the [government], failure to preserve potentially

22   useful evidence does not constitute a denial of due process." *Arizona v. Youngblood*, 488 U.S.

23   51, 58 (1988). Petitioner cannot make that showing. Indeed, he cannot show the prosecution

24

25

1    withheld the allegedly exculpatory evidence at all. As the Washington State Court of Appeals

2    noted, the testimony at trial established that the jacket at issue – the one petitioner claims is

3    exculpatory – was hanging on the back of petitioner's courtroom chair during trial. Dkt. 11,

4    Record, Exhibit 2, pp. 3, 7, 13, and Exhibit 10, Verbatim Report of Proceedings, Volume 1, *State*

5    *v. Fannon*, Cowlitz County Cause No. 14-1-01367-9, at 144.

6         Lastly, petitioner alleges a due process violation based on a failure to disclose allegations

7    during the CrR 3.5 hearing held on the second day of trial. To the extent petitioner alleges a due

8    process violation on the basis of the timing of the hearing, he fails to establish that the timing

9    prejudiced his case. Although the trial judge may have been frustrated by its timing, this

10   occurred because of restrictions on the availability of a prosecution witness. Dkt. 11, Record,

11   Exhibit 10, Verbatim Report of Proceedings, Volume 1, *State v. Fannon*, Cowlitz County Cause

12   No. 14-1-01367-9, at 3-4. The trial judge, furthermore, expressly directed that until a hearing

13   could be held, the state's attorney was prohibited from eliciting any testimony at trial concerning

14   the statements being challenged as the subject matter of the CrR 3.5 hearing. *Id.* at 6-7.

15        Petitioner's claim concerning a failure to disclose allegations during the CrR 3.5 hearing

16   itself is unclear. Dkt. 1, p. 8. In his reply to respondent's answer, petitioner argues that there was

17   "[n]o disclosure of officers alleged statements which now is the main evidence used by the

18   Respondent." Dkt. 13, p. 4. Petitioner asserts that he was surprised no officer would be testifying

19   as to any statements, and that this in turn caused him to be "beguiled into testifying." *Id.*

20        The state court record does not support any claim that petitioner was allegedly forced into

21   testifying against his will either at the CrR 3.5 hearing (Dkt. 11, Record, Exhibit 10, Verbatim

22   Report of Proceedings, Volume 1, *State v. Fannon*, Cowlitz County Cause No. 14-1-01367-9,

23   Exhibit 11, pp. 1987-219), or during the trial (*Id.* at 308-336). Petitioner fails to show how -- if

24

25

1  the alleged statements had been disclosed – such disclosure would have affected the outcome of

2  his trial. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (alleged error must have "had

3  substantial and injurious effect or influence in determining the jury's verdict") (quoting

4  *Katteakos v. United States*, 328 U.S. 750, 776 (1946), and *United States v. Lane*, 474 U.S. 438,

5  449 (1986) (error must result in "actual prejudice")). Petitioner thus has not established any due

6  process violation.

7      E.      Petitioner's Right to Effective Counsel Was Not Violated

8      In his fourth and final claim, petitioner alleges he was denied his Sixth Amendment right

9  to effective assistance of counsel. Under the Sixth Amendment, the Court utilizes the following

10  standard: "whether counsel's conduct so undermined the proper functioning of the adversarial

11  process that the trial cannot be relied on as having produced a just result." *Yarborough v. Gentry*,

12  540 U.S. 1, 4 (2003); *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

13      To prevail, the defendant must show both that "counsel's performance was deficient,"

14  and that "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. Unless

15  both of these showings are made, "it cannot be said that the conviction . . . resulted from a

16  breakdown in the adversary process that renders the result unreliable." *Id.*

17      The Court applies a strong presumption that the performance of counsel is consistent with

18  the wide range of professional lawyering; the proper standard to be used "is that of reasonably

19  effective assistance" under "prevailing professional norms." *Strickland*, 466 U.S. at 687-88.

20  Therefore, "the defendant must show that counsel's representation fell below an objective

21  standard of reasonableness." *Id.* at 688; *United States v. Vincent*, 758 F.2d 379, 381 (9th Cir.

22  1985) (defendant must show that counsel's errors reflect a failure to exercise the skill, judgment

23  or diligence of a reasonably competent attorney).

24      Counsel "has wide latitude in deciding how best to represent a client" and "in making

25

REPORT AND RECOMMENDATION - 12

1  tactical decisions." *Yarborough*, 540 U.S. at 5-6; *Strickland*, 466 U.S. at 689. "The Sixth

2  Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of

3  hindsight." *Yarborough*, at 5.

4          The petitioner must also show prejudice, i.e., "there is a reasonable probability that, but

5  for counsel's unprofessional errors, the result of the proceeding would have been different."

6  *Strickland,* at 694. A reasonable probability is that which is "sufficient to undermine confidence

7  in the outcome." *Id.* When determining whether prejudice exists, the reviewing court "'must

8  consider the totality of the evidence before the judge or jury.'" *Kimmelman v. Morrison*, 477

9  U.S. 365, 381 (1986) (quoting *Strickland*, at 695).

10         "When counsel focuses on some issues to the exclusion of others, there is a strong

11  presumption that he did so for tactical reasons rather than through sheer neglect." *Yarborough*,

12  540 U.S. at 8. "That presumption has particular force where a petitioner bases his ineffective

13  assistance claim solely on the trial record, creating a situation in which a court 'may have no way

14  of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic

15  motive." *Id.* (quoting *Massaro v. United States*, 538 U.S. 500, 505 (2003)). "[T]he relevant

16  inquiry under *Strickland* is not what defense counsel could have pursued, but rather whether the

17  choices made by defense counsel were reasonable." *Siripongs v. Calderon*, 133 F.3d 732, 736

18  (9th Cir. 1998); *see also Dows v. Wood*, 211 F.3d 480, 487 (9th Cir. 2000) ("[C]ounsel's tactical

19  decisions at trial, such as refraining from cross-examining a particular witness or from asking a

20  particular line of questions, are given great deference and must similarly meet only objectively

21  reasonable standards.").

22         Here, petitioner claims trial counsel was ineffective for failing to make any objections,

23  investigations, or inquiry as to procedural errors at trial, and for not calling any of "the other five

24

25

people present at the time of arrest" as witnesses. Dkt. 1, p. 10. Petitioner also alleges that trial

counsel colluded with the prosecutor. *Id.* Petitioner's allegation concerning collusion is wholly

conclusory, and habeas corpus relief in regard to that claim is unwarranted. *Jones v. Gomez*, 66

F.3d 189, 204 (9th Cir. 1995).

As to petitioner's allegations regarding the failure to make investigations or call other

witnesses, the Washington State Court of Appeals specifically declined to address petitioner's

claims that counsel was ineffective for failing to call such witnesses, and allegedly failing to

investigate related evidence. Dkt. 11, Record, Exhibit 2, p. 14. The state court did so, "[b]ecause

review of these claims require[d] examination of matters outside the appellate record." *Id.*

Petitioner has not shown that the state court acted unreasonably in denying these claims

on this basis. Indeed, none of this alleged evidence is part of the record. Nor has petitioner shown

that trial counsel – to the extent he was aware of such evidence – was ineffective in not seeking

or obtaining it.

As to the alleged failure to object or inquire as to procedural errors, in his direct appeal

petitioner claimed trial counsel was ineffective for failing to object to the prosecution's

characterization of the jacket at issue as "Mr. Fannon's jacket" absent evidence in support. Dkt.

11, Record, Exhibit 2, p. 7. The state court rejecting this claim, finding:

> . . . [T]o the extent that the prosecutor misrepresented the evidence by
> referring to the jacket as belonging to Fannon, there was no resulting
> prejudice because the State later presented evidence that the jacket belonged
> to Fannon. Accordingly, Fannon cannot demonstrate any prejudice resulting
> from defense counsel's failure to object to the prosecutor's characterization
> and, thus, he fails to show ineffective assistance of counsel on this ground.

*Id.* Given that the state later presented evidence that the jacket belonged to petitioner, the state

court did not act unreasonably in so finding. Dkt. 11, Record, Verbatim Report of Proceedings,

*State v. Fannon*, Cowlitz County Cause No. 14-1-01367-9 ("VR"), Exhibit 10, Volume 1, at 133,

1  140, 142, 144),  *Strickland*, 466 U.S. at 687 (counsel's performance not only must be deficient, it

2  must prejudice the defense).

3          Petitioner also claimed trial counsel was ineffective in not objecting to the prosecution's

4  question eliciting testimony commenting on his credibility, which again the state court rejected

5  Dkt. 11, Record, Exhibit 2, pp. 8-9. Here too, because petitioner cannot show that the

6  prosecution's question was designed to elicit improper opinion testimony or that there was no

7  legitimate tactical reason for trial counsel's decision not to object to the elicited testimony, the

8  state court's determination was reasonable. *Id.*, VR, Exhibit 11, Volume 2A, at 235-237; *Dows*,

9  211 F.3d at 487 (counsel's tactical decisions, such as refraining from cross-examining a witness

10  or from asking a particular line of questions, are given great deference).

11          Petitioner next claimed trial counsel was ineffective in not objecting to the prosecution's

12  question eliciting Officer Libbui's opinion of his guilt. *Id.*, Exhibit 2, at p. 10. The state court

13  rejected this claim as well. Dkt. 11, Record, Exhibit 2, pp. 10-11. Neither the prosecution's

14  questioning nor Officer Libbui's responses elicited improper opinion testimony. As such,

15  petitioner has not shown that trial counsel acted ineffectively in failing to object on this basis.

16  Dkt. 11, Record, VR, Exhibit 11, Volume 2A, at 234-235; *Strickland*, 466 U.S. at 688 (defendant

17  must show trial counsel's representation was not objectively reasonable); *United States v.*

18  *Vincent*, 758 F.2d 379, 381 (9th Cir. 1985) (defendant must show counsel failed to exercise the

19  skill, judgment or diligence of a reasonably competent attorney).

20          In a fourth claim raised on direct appeal, petitioner alleged trial counsel was ineffective in

21  failing to object to the prosecution's question eliciting testimony on his right to silence. Dkt. 11,

22  Record, Exhibit 2, p. 11. The state court rejected the claim, explaining:

23                  . . . Fannon asserts that his defense counsel was ineffective for failing
         to object to the prosecutor's question eliciting testimony commenting on his

24

25

right to silence. Again, we disagree.

The Fifth Amendment of the United States Constitution and article I, section 9 of the Washington Constitution "guarantee a criminal defendant the right to be free from self-incrimination, including the right to silence." *State v. Knapp*, 148 Wn. App. 414, 420, 199 P.3d 505 (2009). A police witness "may not comment on the silence of the defendant so as to infer guilt from a refusal to answer questions." *State v. Lewis*, 130 Wn.2d 700, 705, 927 P.2d 235 (1996). However, when a defendant waives his or her right to remain silent following adequate *Miranda* warnings and chooses to speak with police, a police witness may comment on what the defendant did and did not say. *State v. Young*, 89 Wn.2d 613, 620-21, 574 P.2d 1171 (1978); *State v. Clark*, 143 Wn.2d 731, 765, 24 P.3d 1006 (2001).

Fannon argues that his defense counsel was ineffective for failing to object to the following questions and answers thereto:

[State]:    Was he—was he providing you with any information as to how he acquired this money at this point?

[Libbui]:   He wouldn't. He—he was unable to provide me anything, any—anything factual of who he sold it to. All the questions I just mentioned, there was no evidence provided to me that could verify that.

[State]:    Okay. So you—so you had been unable to verify any—any information he was providing to you?

[Libbui]:   I had no start. There was absolutely nothing that would point me in even a direction where I could even call someone, or look up something in a DMV record, or there's no—I mean, there's nothing. He—I was given nothing to work with, so—.

RP at 236-37.

Fannon's argument fails. Fannon did not exercise his right to post-arrest silence following advisement of his *Miranda* warnings and instead chose to speak with police, stating that he obtained his cash through the sale of cars. Libbui's challenged testimony concerned Fannon's inability to provide police with details verifying his claim to have obtained cash through car sales. Because Fannon waived his right to post-arrest silence and stated to police that he obtained his cash through car sales, the State could properly inquire, and Libbui could properly testify, about Fannon's failure to provide details verifying his statement to police. Accordingly, Fannon shows neither deficient performance nor resulting prejudice based on his defense counsel's failure to object to the challenged testimony and, thus, his ineffective assistance of counsel claim fails.

*Id.* at pp. 11-13. Given that the prosecution had a proper basis for inquiring as to the information petitioner provided following advisement of his *Miranda* warnings, the state court's rejection of this claim was not unreasonable. *Id.*, VR, Exhibit 11, Volume 2A, at 236-237; *Strickland*, 466 U.S. at 688; *Vincent*, 758 F.2d at 381.

Petitioner also claims trial counsel was ineffective in failing to object to Officer Hartley's testimony that he found petitioner's wallet and cash in the bedroom. Dkt. 11, Exhibit 2, p. 14. The state court rejected this claim on the following basis:

> . . . Fannon argues that Hartley's testimony was misleading because Libbui later testified that he had placed the wallet and cash in the bedroom after seizing them from Fannon following a search incident to Fannon's arrest. Accepting for the sake of argument that Hartley's testimony was misleading, Fannon cannot demonstrate resulting prejudice in light of Libbui's later testimony clarifying when he had found the wallet and cash. Accordingly, Fannon cannot demonstrate that his defense counsel was ineffective for failing to object to Hartley's testimony.

*Id.* Officer Libbui's testimony was clarified, prejudice has not been established, and therefore this claim fails. Dkt. 11, Record, VR, Exhibit 10, Volume 2A, at 232-233; *Strickland*, 466 U.S. at 687.

III.   <u>THERE IS NO BASIS FOR DISCOVERY OR AN EVIDENTIARY HEARING</u>

In a federal habeas corpus proceeding, the "determination of a factual issue" made by a state court "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). The petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.* Where he or she "has diligently sought to develop the factual basis of a claim for habeas relief, but has been denied the opportunity to do so by the state court," an evidentiary hearing is not precluded. *Baja v. Ducharme*, 187 F.3d 1075, 1078-79 (9th Cir. 1999) (quoting *Cardwell v. Greene*, 152 F.3d 331, 337 (4th Cir. 1998)).

If, however, the petitioner fails to develop "the factual basis of a claim" in the state court proceedings, an evidentiary hearing on that claim will not be held, unless the petitioner shows:

(A) the claim relies on--

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense

28 U.S.C. § 2254(e)(2). The phrase "failed to develop" contained in 28 U.S.C. § 2254(e)(2) "implies some lack of diligence" on the petitioner's part. *Williams v. Taylor*, 529 U.S. 420, 430-31 (2000). Thus, "a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the [petitioner] or the [petitioner's] counsel." *Id.* at 432. Accordingly, "[i]f there has been no lack of diligence at the relevant stages in the state proceedings, the [petitioner] has not 'failed to develop' the facts under § 2254(e)(2)," and he or she "will be excused from showing compliance with the balance of [that] subsection's requirements." *Id.* at 437.

"[A]n evidentiary hearing . . . is required where the petitioner's allegations, if true, would entitle him to relief, and the petitioner has satisfied the requirements [the Supreme Court set forth in] *Townsend v. Sain*, 372 U.S. 293 (1963)." *Stanley v. Schriro*, 598 F.3d 612, 624 (9th Cir. 2010). The district court is required to hold an evidentiary hearing when there is a dispute of material facts, the petitioner "alleges facts which, if proved, would entitle him to relief," and the state court has not "after a full hearing reliably found the relevant facts." *Townsend*, 372 U.S. at 312-13; *Stanley*, 598 F.3d at 624. However, an evidentiary hearing "is *not* required on issues that

can be resolved by reference to the state court record." *Totten v. Merkle*, 137 F.3d 1172, 1176

(9th Cir. 1998) (emphasis in the original); *see also Schriro v. Landrigan*, 550 U.S. 465, 474

(2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas

relief, a district court is not required to hold an evidentiary hearing.").

Petitioner has filed a motion for evidence in which he requests discovery. Dkt. 14.

Petitioner has not established good cause for – and therefore is not entitled to – discovery of the

requested items. He also has failed to show an evidentiary hearing is necessary or warranted.

Petitioner has made no showing that he has been denied a full and fair opportunity to develop the

factual basis of any of his claims at the state court level.

Each of petitioner's discovery requests concerns public records or other evidence that –

to the extent such items exist – would or should have been in existence prior to or at the time of

his trial. Yet there is no indication in the record that either Mr. Fannon or trial counsel made any

meaningful attempt to obtain them prior to seeking federal habeas corpus review. Nor has he met

the requirements for establishing entitlement to an evidentiary hearing despite having failed to

diligently develop the record, because none of his allegations rely on (1) a new rule of

constitutional law made retroactive to cases on collateral review by the Supreme Court that was

previously unavailable, or (2) as just noted, a factual predicate that he could not have previously

discovered through the exercise of due diligence.

Specifically, petitioner seeks the following:

- the "Assignment Records" for Detectives Libbui, Hartley, and B.J.
  Mortensen regarding their "whereabouts," because they were not at the
  place where petitioner was arrested;

- search warrants issued for the address where petitioner was arrested for
  the months of October, November, and December 2014, because petitioner
  did not live there, and so no warrant for him should exist;

- the drug court records of his graduation to verify his address, employment, and charges were erased, such that there were no active charges to justify his arrest; and

- Department of Motor Vehicles transfer and ownership records of the titles of petitioner's "custom 4X4's, RV's and pickups," to verify "the monies" were supplementing his income and were not used as "drug monies."

Dkt. 14, p. 3.

The district court "may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Courts; *Pham v. Terhune*, 400 F.3d 740, 743 (9th Cir. 2005) (a *habeas* petitioner is entitled to discovery if, and to the extent that, the court in the exercise of its discretion and for good cause shown grants leave to do so, but not otherwise). Accordingly, "[a] habeas petitioner, unlike the usual civil litigant in federal court is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). To the extent a petitioner is entitled to it, though, discovery is available "regardless of whether there is to be an evidentiary hearing." *Jones v. Woods*, 114 F.3d 1002, 1009 (9th Cir. 1997).

*Detective Assignment Records*

Petitioner requests discovery of the "Assignment Records" for Detectives Libbui, Hartley, and Mortensen regarding their "whereabouts on or before 4 pm, Nov. 12[th], 2014," claiming they were not present at the address where he was arrested. Dkt. 14, p. 3. This request appears to relate to petitioner's first claim for habeas corpus relief: that his Fifth Amendment rights were denied because, contrary to the detectives' testimony at trial, he never was interrogated following his arrest, no collaborating evidence was presented at trial regarding any interrogation, and he was "beguiled" to testify that their testimony was not true. Dkt. 1, p. 5.

Although Mr. Fannon characterizes this as a due process issue, the Court should interpret it as a factual challenge to the evidence presented at trial. Petitioner's claim fails for two reasons. First, even though a federal court may overturn a state court finding of fact on federal habeas corpus if the state court a makes factual determination that is objectively unreasonable in light of the evidence presented, the state court's factual determination is presumed correct – unless there is "clear and convincing evidence to the contrary." *Miller-El v. Cockrell,* 537 U.S. 322, 340 (2003). As such, a district court may only overturn a state court's factual determinations if it concludes those determinations do not have even "fair support" in the record. *Marshall v. Lonberger,* 459 U.S. 422, 432 (1983).

Petitioner's allegations that all three detectives were not present at his arrest and did not question him following his arrest, and therefore presented completely false testimony at trial, is wholly conclusory. Petitioner presents no evidence other than his mere assertion that none of the detectives were present and that they testified falsely, and he makes no credible showing that the detectives' "assignment records" are likely to discredit their testimony. In essence, petitioner is asking the Court to "disagree" with the state court's factual determination. This does not rise to the level of "clear and convincing."

Second, the existence of *newly* discovered evidence that bears upon the constitutionality of a petitioner's conviction or sentence constitutes a valid ground for federal habeas corpus relief under some circumstances. *Townsend v. Sain*, 372 U.S. 293, 317 (1963). "New" evidence is evidence "*which could not have been presented* to the state trier of facts." *Id.* (emphasis added). Thus, "the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief." *Id.*

Petitioner has not shown that the detectives' assignment records are "new"; indeed, the

1  record shows that petitioner was aware at least by the time of trial of the existence of the

2  detectives' testimony and version of events – and while on the witness stand he asked the State's

3  attorney to give him certain police records. Dkt. 11, Record, VR, Exhibit 11, Volume 2A, RP

4  332. Yet there is no indication he or trial counsel was prevented during pretrial discovery from

5  requesting and obtaining the detectives' assignment records (assuming, for purposes of this

6  analysis, such records existed).

7      Claims of actual innocence, based on newly discovered evidence, are not a ground for

8  federal habeas relief – unless there is an independent constitutional violation in the state criminal

9  proceeding. *Herrera v. Collins*, 506 U.S. 390, 400 (1993). This rule "is grounded in the principle

10  that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the

11  Constitution – not to correct errors of fact." *Id.*

12      In habeas corpus review, "[f]ederal courts are not forums in which to relitigate state

13  trials." *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983). Petitioner seeks to have this Court re-visit

14  factual issues that were decided by a state court, and because he fails to establish that the

15  detectives' assignment records (if they existed) could not have been presented during the state

16  court proceedings, he has not shown good cause to obtain discovery of that evidence.

17                                    *Search Warrants*

18      Petitioner's request for discovery regarding search warrant(s) issued for the address

19  where he was arrested during the months of October, November, and December of 2014, appears

20  to relate to his second ground for habeas corpus relief (that the search warrant in his case

21  violated his rights under the Fourth Amendment). Specifically, petitioner asserts he did not live

22  there and had just graduated from drug court, and therefore there were no new charges filed

23  against him to justify the issuance of a warrant. Dkt. 1, p. 7. Indeed, he believes no such search

24

25

REPORT AND RECOMMENDATION - 22

1    warrant exists. Dkt. 14, p. 3.

2        "Where the State has provided an opportunity for full and fair litigation of a Fourth

3    Amendment claim," therefore, "a state prisoner may not be granted federal habeas corpus relief

4    on the ground that evidence obtained in an unconstitutional search or seizure was introduced at

5    his trial." *Stone v. Powell*, 428 U.S. at 494. Further, all that is required to meet this standard is to

6    provide "the initial opportunity for a fair hearing," regardless of whether a defendant "did in fact

7    litigate [his or her] Fourth Amendment claim." *Gordon v. Duran*, 895 F.2d 610, 613 (9th Cir.

8    1990); *Caldwell v. Cupp*, 781 F.2d 714, 715 (9th Cir. 1986). "Such an opportunity for a fair

9    hearing forecloses the [district] court's inquiry, upon habeas petition, into the trial court's

10   subsequent course of action." *Caldwell*, at 715.

11       Washington law provides for an evidentiary hearing to be conducted, if the trial court

12   determines that one is necessary based on a motion to suppress physical, oral or identification

13   evidence. Superior Court Criminal Rule ("CrR") 3.6. However, the record shows that neither

14   petitioner nor trial counsel submitted a request for a hearing or motions to suppress evidence.

15   Accordingly, this is not a situation where the defendant requested a hearing on a Fourth

16   Amendment claim, but was denied the opportunity to do so by the state trial court. Therefore,

17   petitioner has not shown good cause for obtaining – and thus is not entitled to – discovery

18   concerning the search warrants.

19                                    *Drug Court Records*

20       Petitioner seeks discovery of his drug court graduation records in order to verify that he

21   had no active criminal charges that would justify any search warrant. Dkt. 14, p. 3. This request

22   would also appear to be in relation to petitioner's Fourth Amendment claim. However, for the

23   same reasons discussed above – namely, that petitioner has received a full and fair opportunity

24

25

for a fair hearing on his Fourth Amendment claim at the state court level – he is precluded from raising that claim here on collateral federal habeas corpus review. Petitioner thus has not shown good cause for obtaining – and therefore is not entitled to – discovery concerning his drug court records.

*Department of Motor Vehicle Records*

Petitioner seeks discovery of Department of Motor Vehicle records concerning the ownership of and transfer of titles of certain "custom 4X4's, RV's and pickups," that he claims would verify the cash the police found during his arrest were from the sale of those vehicles, and not the proceeds of drug sales. Dkt. 14, p. 3. This request appears to relate to his first claim alleging the detectives testified falsely about him being interrogated following his arrest. But because as discussed above that claim is essentially a factual challenge to the evidence presented at trial, which is not cognizable on federal habeas corpus review, he is not entitled to discovery with respect thereto, including Department of Motor Vehicle records.

IV.     CERTIFICATE OF APPEALABILITY

If the Court adopts the undersigned's Report and Recommendation, it must determine whether a COA should issue. Rule 11(a), Rules Governing Section 2254 Cases in the United States District Courts ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). A COA may be issued only where a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2)-(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

The undersigned recommends that Petitioner not be issued a COA. No jurist of reason

could disagree with the above evaluation of Petitioner's constitutional claims or conclude that the issues presented in regard to those claims deserve encouragement to proceed further. Petitioner should address whether a COA should issue in his written objections, if any, to this Report and Recommendation.

V.    <u>CONCLUSION</u>

    Based on the foregoing discussion, the undersigned recommends that petitioner's habeas corpus petition and all of the claims contained therein (Dkt. 1) be DENIED.

    The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); Federal Rule of Civil Procedure (FRCP) 72(b); *see also* FRCP 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the above time limit, the Clerk shall set this matter for consideration on **June 1, 2018**, as noted in the caption.

    Dated this 11th day of May, 2018.



Theresa L. Fricke
United States Magistrate Judge